IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BAYER CLOTHING GROUP, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 07 C 2395 |
| ) | |
| **SEARS, ROEBUCK & CO.,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Sears, Roebuck & Co.'s ("Sears") motion for summary judgment and Sears' motion to strike. For the reasons stated below, we grant the motion for summary judgment in its entirety and we deny the motion to strike as moot.

### BACKGROUND

Plaintiff Bayer Clothing Group, Inc. ("Bayer") alleges that it was a private-label clothing designer and manufacturer that sold clothes to retailers. In November 2003, Bayer and Sears allegedly discussed a deal under which Bayer would design and manufacture pants and suit coats for Sears' line referred to as the "Structured Suited Separates Program" ("Program"). In January 2004, Sears allegedly notified

Bayer that it had been selected to supply the clothing for the Program and the parties entered into an Agreement in regard to the Program ("Agreement"). The Program was allegedly scheduled to begin in 155 stores in the Fall of 2004, and in 300 additional stores in the Spring of 2005. On January 14, 2004, Sears allegedly orally gave Bayer an order for initial quantities of clothing for the Program and asked Bayer to start buying materials to manufacture the clothing. On February 19, 2004, Sears allegedly signed an order for Bayer to make 73,425 units for the Fall of 2004, which were scheduled to ship from August 2004 to November 2004. On May 17, 2004, Sears allegedly sent Bayer a writing reducing the order to 67,123 units.

On June 9, 2004, Sears placed an order for its Spring of 2005 launch of the Program. Sears allegedly signed a written order for an additional 57,459 units to be shipped from December 2004 to May 2005. On August 18, 2004, Sears also allegedly ordered 34,133 units and on October 14, 2004, Sears allegedly ordered an additional 25,273 units. Bayer contends that at that point Sears had ordered a total of 183,988 units and owed Bayer $7,914,572.

According to Bayer, several months after Bayer started shipping to Sears, Sears notified Bayer that there had been a high rate of returns and exchanges of the Program clothing. Sears allegedly believed that the clothing did not conform to the specifications required by Sears, and Sears suspended planned shipments and told Bayer to stop manufacturing clothing for the Program. Sears allegedly agreed to conduct a formal audit to determine whether the garments shipped by Bayer conformed to Sears' specifications. Bayer claims that in March 2005, an audit was

conducted and Bayer's clothing passed the audit. Bayer contends that despite the audit results, Sears never fully lifted the suspension of the Program. According to Bayer, as a result, Bayer did not manufacture 69,063 units that had been ordered, leaving Bayer with significant amounts of material that it purchased specifically for the Program. Bayer also claims that Sears did not accept shipment of all the manufactured garments for the Program. Bayer brought the instant action and includes in its complaint a breach of contract claim. Sears now moves for summary judgment and moves to strike certain materials and responses.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Sears argues that it is entitled to summary judgment because Sears merely gave Bayer estimates or forecasts rather than orders and that under the terms of the Agreement, Bayer agreed to assume any risk for relying upon such "estimates or forecasts."

I.  Whether Sears Gave Bayer Orders

Sears argues that it did not breach the Agreement since the alleged orders that Bayer contends Sears failed to honor were only "estimates or forecasts." It is undisputed that the Agreement provides that "[a]ny estimates or forecasts of Sears

[sic] future needs for Merchandise which may be provided to Seller by Sears are for long range planning purposes only and shall not in any way represent a commitment of Sears." (R SF Par. 8). The Agreement further provides that "Sears shall have no responsibility for any actions taken by Seller based on such estimates or forecasts." (R SF Par. 8).

### A. Documents Submitted by Sears to Bayer

Sears contends that, in the documents relied upon by Bayer, Sears merely gave Bayer "estimates or forecasts" of the amount of clothing it would need for the Program and that the documents were not orders. Sears acknowledges that some documents or parts of documents pointed to by Bayer were orders, and Bayer does not base its claim for damages on such documents. The only material dispute is in regard to a document dated October 14, 2004 ("October 14 Document"). Sears contends that the October 14 Document is not an order. (Mem. SJ 4).

### B. October 14 Document

Sears contends that the October 14 Document was merely an estimate or forecast and was not a binding order. The October 14 Document consists of a series of grids that specify the amounts of certain styles and colors of clothing and prices. At the top of most of the pages is a caption that states: "STRUCTURE BASIC TWO PLEAT ITEM/SKU PROJECTIONS." (S Ex. 16).

The parties agree that the Agreement is governed by the Illinois Uniform

Commercial Code ("UCC"). (Mem. SJ. 6); (Ans. 7). The UCC provides that "[w]here the contract for sale involves repeated occasions for performance by either party . . . [t]he express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, *shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control* course of performance and course of performance shall control both course of dealing and usage of trade. . . ." 810 ILCS 5/2-208 (emphasis added). Thus, under Illinois law, "the Illinois Commercial Code only allows extrinsic evidence including course of performance, course of dealing, and usage of trade to be considered when it is reasonably consistent with the express terms of the contract." *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 380 (7th Cir. 2000).

In addition, under Illinois contract law, where an agreement indicates that it is the totality of the parties' agreement, "the parol evidence rule generally forbids the use in evidence of a prior or contemporaneous agreement or terms not included in the Contract." *Id.* Extrinsic evidence can only be considered "to discover the parties' genuine intent when a contract is ambiguous." *Id.* To assess whether a contract is ambiguous, the court must "first look to the plain language of the Contract." *Id.* at 377-78 (indicating that "[a]ccording to Illinois law, a contract is ambiguous only if it is 'reasonably and fairly susceptible to more than one construction'")(quoting in part *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993)). The party that contends that a contract is ambiguous is required to

6

"first convince the judge that this is the case, . . . and must produce objective facts, not subjective and self-serving testimony, to show that a contract which looks clear on its face is actually ambiguous." *Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Industries, Inc.*, 61 F.3d 560, 565 (7th Cir. 1995). A party cannot utilize "extrinsic evidence . . . to *create* an ambiguity." *Id.* (emphasis in original).

In the instant action, Bayer has not shown that the Agreement is ambiguous in regard to its definition of "estimates and forecasts." The Agreement clearly defines the terms and clearly provides that Sears shall not bear any responsibility for Bayer's reliance on such "estimates or forecasts." The use of the term "Projections" on the October 14 Document indicates that the document was intended solely to be an estimate or forecast. Bayer has not pointed to any language in the Agreement or any other evidence in the record that would show that the Agreement is ambiguous or that would render the legal significance of the October 14 Document unclear. Bayer instead points to extrinsic evidence, such as the parties' prior dealings, trade usage, and alleged oral representations made by Sears' representatives. As indicated above, however, a party cannot use extrinsic evidence to create an ambiguity when an agreement is clear on its face. *Murphy*, 61 F.3d at 565.

In addition, Bayer is attempting to introduce extrinsic evidence that would give the October 14 Document and the usage of the word "Projections" a meaning that is contrary to the express terms set forth in the Agreement. The word "Projections" clearly falls within the scope of the Agreement's definition for "estimates or forecasts," and Bayer is attempting to show through extrinsic evidence

that the parties did not really mean the term to be an estimate or forecast. Under the UCC, the express written Agreement controls when other evidence indicates an inconsistent meaning. 810 ILCS 5/2-208. Therefore, we find as a matter of law that the October 14 Document was not an order. In addition, Bayer has not shown that any other documents upon which it bases its claim for damages were orders.

II. Modification

Sears indicates that, to the extent that Bayer relies upon oral statements allegedly made by Sears representatives, Bayer has not shown that the parties modified the Agreement to make such estimates or forecasts binding orders. Sears also argues that even if it did initially agree to consider documents, such as the October 14 Document, as orders, the parties subsequently modified the Agreement to coincide with the winding down the unsuccessful Program. We need not address Sears' contention that there was a modification in its favor since, as stated above, Bayer has not pointed to sufficient evidence that shows that to begin with the documents relied upon by Bayer were orders under the terms of the Agreement. In addition, Bayer has not shown that the Agreement was modified to render such documents orders.

It is undisputed that the Agreement expressly provides that all modifications of the Agreement must be in writing. (Sears SJ Ex. 4, 4). Although under Illinois law, the parties in this case could still have made an oral modification, *Tadros v. Kuzmak*, 660 N.E.2d 162, 170 (Ill. App. Ct. 1995), the term providing that

modifications must be executed in writing is relevant in assessing whether there was a modification. Bayer has not pointed to any evidence that shows that the parties formally modified the Agreement to render documents such as the October 14 Document orders. In addition, Bayer has not presented sufficient evidence to overcome the express terms in the Agreement providing that modifications must be agreed to in writing or to show that any oral modification occurred. Thus, as a matter of law we cannot conclude that Bayer modified the Agreement in a fashion that would render the documents relied upon by Bayer to be orders pursuant to the Agreement. Therefore, we grant Sears' motion for summary judgment. We note that Sears has also filed a motion to strike. We deny that motion as moot.

## CONCLUSION

Based on the foregoing analysis, we grant Sears' motion for summary judgment in its entirety and deny the motion to strike as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 7, 2008